UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN DOYLE BURTON,<br><br>         Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>         Respondent. | Case No.: 19-CV-01984-AJB;<br>16-CR-00746-AJB-1<br><br>**ORDER:**<br><br>**(1) DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 (Doc. No. 81); and**<br><br>**(2) DENYING AS MOOT PETITIONER'S MOTION FOR APPOINTMENT OF COUNSEL (Doc. No. 81)** |

  Petitioner Steven Doyle Burton ("Burton" or "Petitioner") moves under 28 U.S.C. § 2255 ("Section 2255") to Vacate, Set Aside, or Correct his Sentence on the basis of ineffective assistance of counsel and government misconduct ("Section 2255 Petition"). (Doc. No. 81.) The United States opposes the Section 2255 Petition. For the reasons discussed in detail below, the Court **DENIES** the petition, **DENIES** a certificate of appealability, and **DENIES AS MOOT** Petitioner's motion for appointment of counsel.

## I. BACKGROUND

On July 21, 2016, a jury found Petitioner guilty of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. § 841; being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (Doc. Nos. 37 & 39.) Petitioner was sentenced to one hundred eighty (180) months in custody and four (4) years of supervised release. (Doc. No. 94 at 3.)

The facts leading up to Petitioner's indictment and subsequent guilty verdict are as follows. Burton was stopped for a traffic violation in November 2013. (Doc. No. 94 at 2.) During the stop, officers conducted a records check which revealed Burton had a suspended license and an active Fourth Amendment waiver. (*Id.*) Officers searched Burton's person and discovered, among other items, marijuana. (Doc. No. 81 at 16.) Thereafter, officers went to search Burton's house, which was one or two houses down the street. (*Id.* at 15.) They searched the garage, where Burton's grandmother confirmed Burton kept his things, and found a bag of cocaine and $6,200 in a red sweatshirt. (Doc. No. 94 at 2.) Using a key from Burton's keyring, they also unlocked a locked backpack, which contained a locked box, a gun, two loaded clips, ammunition, and $29,500. (*Id.*) The officers unlocked the locked box with another key from Burton's keyring, which contained a second gun. (*Id.*) In a planter box in the driveway, officers also discovered two bags of cocaine and drug paraphernalia. (*Id.*)

On April 7, 2016, the government filed a four-count indictment, charging Burton with: (1) possessing cocaine base with intent to distribute, in violation of 21 U.S.C. § 841; (2) possessing a gun in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1); (3) being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (4) being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (Doc. No. 94 at 2–3.) John G. Cotsirilos and Jeremy D. Warren were appointed as counsel. (Doc. No. 94-1 at 2.) On April 14, 2016, Burton was arraigned and entered a plea of not guilty. (Doc. No. 5.) After a three-day trial, Petitioner was convicted on Counts

1, 3, and 4. (Doc. No. 30.) Thereafter, Burton appealed his conviction and sentence on the basis that his counsel was ineffective, that the evidence of his prior felony conviction was insufficient, and that the forfeiture evidence was insufficient. (Doc. No. 94 at 3–4.) The Ninth Circuit declined to address the ineffective assistance of counsel argument on direct appeal and rejected the remaining arguments. (*Id.* at 4) Burton then appealed to the Supreme Court, which denied *certiorari*. (*Id.*)

On October 11, 2019, Petitioner initiated this action alleging ineffective assistance of counsel and government misconduct. (Doc. No. 81.) On July 26, 2021, the United States filed its opposition. (Doc. No. 94.)

## II.   LEGAL STANDARD

Under Section 2255, a petitioner is entitled to relief if the sentence (1) was imposed in violation of the Constitution or the laws of the United States, (2) was given by a court without jurisdiction to do so, (3) was in excess of the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Speelman*, 431 F.3d 1226, 1230 n.2 (9th Cir. 2005). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

## III.   DISCUSSION

Burton brings a Section 2255 Petition centered on several grounds of ineffective assistance of counsel and one claim of government misconduct. (Doc. No. 81.) The Court will address each claim in turn.

### A.   Ineffective Assistance of Counsel

The Supreme Court has held "that the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58–59 (1985). "[T]o establish ineffective assistance of counsel, a party must

demonstrate (1) that counsel's performance was unreasonable under prevailing professional standards and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different." *Hasan v. Galaza*, 254 F.3d 1150, 1154 (9th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687–91 (1984)). Accordingly, "to have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance *and* resulting prejudice." *Id.* (emphasis in original). Furthermore, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.

Here, Petitioner alleges that his counsel failed to request a *Franks* hearing, failed to properly investigate and prepare for trial, ineffectively cross-examined witnesses, and was denied effective assistance of counsel on appeal. (Doc. No. 81 at 4–5.) Petitioner also alleges government misconduct, i.e., vindictive prosecution.

### 1.     Request of a *Franks* Hearing

First, Petitioner alleges his trial counsel, Mr. Warren, failed to request a *Franks* hearing to challenge the validity of the affidavit underlying the search warrant for his phone. (Doc. No. 81 at 24.) *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). "To obtain a *Franks* hearing, a defendant must make a substantial preliminary showing that: (1) 'the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant,' and (2) 'the false or misleading statement or omission was material, *i.e.*, necessary to finding probable cause.'" *United States v. Norris*, 942 F.3d 902, 909–10 (9th Cir. 2019) (citing *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017). Specifically, Petitioner contends Agent Ricardo Jimenez "knowingly and intentionally lied and made false statement in bad faith" in his affidavit. (Doc. No. 81 at 25.) In Agent Jimenez's Affidavit of Facts Supporting Probable Cause, he stated that ///

Government witness Marcia May Acey "indicated to officers that the sweatshirt belonged to BURTON and that she had seen BURTON wash the hoodie portion of the sweatshirt on approximately three prior occasions." (*Id.*) Petitioner claims this statement was false because Ms. Acey later testified at trial that she did not recognize the sweatshirt. (*Id.* at 26.)

However, as noted by Mr. Warren, "[he] could not have been aware of Ms. Acey's trial testimony before trial, and thus did not know she may disavow the allegation in the warrant application." (Warren Decl. ¶ 4, Doc. No. 94-1 at 2.) Moreover, Agent Jimenez relied upon Officer Barton's contemporaneous notes, report, and trial testimony in preparing the affidavit, wherein Officer Barton stated Ms. Acey told him the sweatshirt belonged to Petitioner. (Doc. No. 94 at 5.) Because Ms. Acey is Petitioner's grandmother, it is reasonable that she may give a more favorable account of events after her initial interview with Officer Barton, more than a year and a half later, during trial. (*Id.* at 6.) Thus, Petitioner has failed to make a preliminary showing that the affiant officer intentionally or recklessly made false or misleading statements in support of the warrant.

Next, Petitioner asserts that Officer Jimenez intentionally or recklessly made a false or misleading statement in support of the warrant when stating "I also believe that BURTON may have used Target Telephone #2 to coordinate with co-conspirators regarding the distribution of cocaine base. Further, I believe that BURTON used Target Telephone #2 to obtained [sic] the firearm and ammunition found during the search of his home." (Doc. No. 81 at 26.) Petitioner claims these statements regarding a conspiracy to distribute cocaine and obtain firearms and ammunition were conclusory allegations which "misrepresented the potential benefits of traditional investigatory techniques and was misleading." (*Id.* at 27.) However, Officer Jimenez stated his beliefs were based upon his "experience and investigation in this case," as well as his "experience investigating narcotics traffickers[.]" (*Id.* at 26.) Thus, the Court does not find Officer Jimenez's statement to be false or misleading, or "intentionally or recklessly" made. Additionally, regardless of Officer Jimenez's statements, there was likely probable cause to support the warrant to search Petitioner's cell phone. Because the cellphone at issue was found with

drugs and cash on Petitioner's person, there was a strong nexus between the phone and the gun and drug offenses. (Doc No. 94 at 7.) Accordingly, the Court finds that Petitioner has failed to establish that Petitioner's counsel's performance was unreasonable in declining to request a *Franks* hearing.

Furthermore, Petitioner has not shown "that there is a reasonable probability that the verdict would have been different absent the excludable evidence[.]" *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Petitioner contends that, had trial counsel requested a *Franks* hearing, the contents of his cellphone would have been suppressed. (Doc. No. 81 at 30.) Thus, asserts Petitioner, "it would have resulted in reasonable doubt in the eyes of the jury that the drugs and guns could have very well belonged not to Mr. Burton but to Mr. Burton's grandmother, his uncle or multiple other children and grandchildren who had keys to the house[.]" (*Id.*) However, even with the exclusion of the text messages, the evidence and testimony from a narcotics expert do not support a reasonable probability that the verdict would have been different.

### 2. Investigation of Officer Christina Berg

Petitioner further asserts his trial counsel was ineffective because he failed to investigate Officer Christina Berg, the impound officer. (Doc. No. 81 at 31.) "A claim of failure to interview a witness … cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *Eggleston v. United States*, 798 F.2d 374, 376 (9th Cir. 1986) (quoting *United States v. Decoster*, 624 F.2d 196, 209 (D.C. Cir. 1976)). "Moreover, ineffective assistance claims based on a duty to investigate must be considered in light of the strength of the government's case." *Id.* Here, Petitioner states that, if trial counsel had investigated Officer Berg, "he would have discovered there was a complaint made against Officer Berg for Excessive Force, that was unresolved." (Doc. No. 81 at 32.) Petitioner further contends this failure to locate, interview, and investigate Officer Berg deprived him of the opportunity to cross-examine her. (*Id.* at 34.)

Officer Berg's testimony primarily pertained to her role as an impound officer and the evidence's chain of custody. (Doc. No. 94 at 11–12.) Although Officer Berg testified

to being present when several items collected for evidence were located, she did not testify as to the admissibility of the evidence. (*Id.*) Rather, she testified that she followed procedure for impounding evidence for each collected item. (*Id.*) The alleged excessive force complaint against Officer Berg had little to no probative value of her role as an impound officer or to any of the procedures that she testified to. Furthermore, Officer Berg's testimony was supported by the testimony of Officer Cummings, who assisted in seizing items at the scene. (Doc. No. 70 at 124–25.) Thus, it was reasonable for trial counsel to make the strategic decision not to cross examine Officer Berg.

Petitioner has not provided any evidence or further argument to rebut any of these facts. Under the first *Strickland* prong, counsel's assistance was well within the range of competence demanded of counsel in criminal cases. As such, the Court need not reach the second *Strickland* prong regarding this ground of Petitioner's ineffective assistance of counsel claim. The Court concludes that this ground does not constitute an adequate basis to find ineffective assistance of counsel.

### 3. Investigation and Cross-Examination of Milton Vincent Acey

Petitioner next asserts his trial counsel performed unreasonably because he failed to investigate Milton Vincent Acey, Petitioner's uncle. (Doc. No. 81 at 36.) Petitioner asserts that if his trial counsel had investigated Mr. Acey, he would have uncovered Mr. Acey's felony drug convictions, which could have been raised during cross examination. (*Id.*) However, Petitioner's trial counsel did investigate Mr. Acey and determined that "whether [Mr. Acey] had used drugs ten years before did not seem particularly probative." (Warren Decl. ¶ 8.) Additionally, Mr. Warren "felt that Mr. Acey presented as a kindly gentleman and [he] believed the jury would not like [him] impeaching [Mr. Acey] with an old simple possession conviction, and [he] was worried they would see [him] as bullying an older individual." (*Id.*) Mr. Warren also had direct impeachment of Mr. Acey that was presented otherwise, which Mr. Warren believed was "more compelling than indirect impeachment based on an old conviction." (*Id.*) Petitioner therefore presents insufficient evidence to

///

rebut the strong presumption that the trial counsel's performance "falls within the wide range of professional assistance." *Strickland*, 466 U.S. at 689; *Molina*, 934 F.2d at 1447. On this basis, the Court concludes this ground does not constitute an adequate basis to find ineffective assistance of counsel.

### 4.  Trial Counsel's Opening Statement

Before trial, the government sought to admit evidence showing that, several months before his arrest in this case, Petitioner was arrested in front of his house after officers witnessed him make a drug sale. (Doc. No. 81 at 41.) The Court denied the government's motion to admit this evidence in its case-in-chief but stated it could be used as "possible impeachment or rebuttal if the defense opens up some idea through some witness . . . that he would never touch cocaine base, or his statement 'I've never seen it[.]'" (Doc. No. 68 at 28.) Thereafter, Mr. Warren told the jury in his opening statement, "There will not be a single witness who will come into court who will say, 'That man, right there, I saw him, I saw him with guns, I saw him with drugs, I saw him with that money.' It will not happen." (Doc. No. 70 at 28.) Although Mr. Warren clarified to the Court during recess that he had been referring to what Petitioner was charged with and the evidence found that day, the Court granted the government's request to bring in Petitioner's prior arrest. (*Id.* at 65.)

Trial counsel admits that he inadvertently opened the door to other-acts evidence in his opening statement. (Warren Decl. ¶ 8.) However, despite this error, Mr. Warren's overall performance was neither unreasonable nor ineffective. To prevail on an ineffective assistance of counsel claim, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of professional assistance." *Id.*; *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991). Here, trial counsel successfully requested to bifurcate counts in the case, attacked the government's evidence, cross-examined witnesses, and obtained an acquittal for Petitioner on one of the four counts in the indictment. Mr. Warren

also effectively advocated on Petitioner's behalf at sentencing and received an 82-month downward variance from the low end of the Guidelines range.

Consequently, as Petitioner has not met his burden to establish deficient performance, his ineffective assistance of counsel claim on this basis necessarily fails. *See Gonzalez v. Wong*, 667 F.3d 965, 987 (9th Cir. 2011) (citing *Strickland*, 466 U.S. at 697) ("Because failure to meet either prong is fatal to [Petitioner's] claim, there is no requirement that [the Court] 'address both components of the inquiry if the defendant makes an insufficient showing on one.'").

### 5.   Counsel's Decision Not to Object to Petitioner's Career-Offender Status

Petitioner alleges he was denied the effective assistance of counsel during sentencing. (Doc. No. 81 at 53.) On November 15, 2016, the career-offender enhancement was recommended, based upon two prior felony convictions for a controlled substance. (*Id.*) Petitioner admits both prior felony convictions were for possession and purchase of cocaine base for sale. (*Id.* at 54.) Petitioner argues that, had Mr. Warren thoroughly researched the relevant code and applicability of the career-offender enhancement, he would have known that Petitioner's prior convictions should not have subjected him to the career-offender enhancement. (*Id.*)

Petitioner falls squarely within the definition of a career offender. A defendant is a career offender if: (1) the defendant was at least eighteen years old at the time they committed the offense, (2) the conviction is a felony that is a controlled substance offense, and (3) the defendant has at least two prior felony convictions of a controlled substance offense. U.S. SENTENCING GUIDELINES MANUAL § 4B1.1(a) (U.S. SENTENCING COMM'N 2018). A controlled substance offense includes "possession of a controlled substance . . . with intent to . . . distribute." *Id.* at § 4B1.2(b). Here, Petitioner was over eighteen years old at the time he committed the offense and his conviction for possession of cocaine with intent to distribute is a controlled substance offense. Additionally, he had two prior felony controlled substance offenses, where he was convicted on two occasions for possessing

cocaine for sale in violation of California Health & Safety Code § 11351.5. The Ninth Circuit has held that "a conviction under § 11351.5 is categorically a controlled substance offense under [the career-offender] guideline." *United States v. Charles*, 581 F.3d 927, 936 (9th Cir. 2009); *see also United States v. Mitchell*, 624 F.3d 1023, 1027 (9th Cir. 2010). Accordingly, the Court finds that Petitioner has failed to establish that Petitioner's counsel's performance was unreasonable in declining to object to Petitioner's career-offender status.

### 6. Trial Counsel's Decision Not to Object to Burton's Special Condition of his Supervised Release

Petitioner's next ground for ineffective assistance of counsel is trial counsel's decision not to object to the special condition of Petitioner's supervised release, which dealt with gang association. (Doc. No. 81 at 58.) Condition 3 of the special conditions of supervision states Petitioner "[s]hall not associate with any member, prospect, or associate of the (Skyline Pirus), or any other gang, or club with a history of criminal activity, unless given permission by the probation officer." (Doc. No. 57 at 4.) Petitioner asserts the special condition is unconstitutionally vague for three reasons: (1) the term "gang" is undefined and thus fails to give notice as to which groups of people are covered; (2) the term "associate member," "other gangs," and "club" also lack specific meaning; and (3) the condition presumes Petitioner is knowingly associating with gang members or clubs, with the purpose of participating in gang activities, if he is found in the company of gang members or clubs while wearing clothing, colors, or insignia of a gang. (*Id.* at 60.)

The Court rejects Petitioner's ineffective assistance of counsel claim on this ground. First, the term "gang," particularly when qualified by "with a history of criminal activity," is sufficiently clear. *See United States v. Soltero*, 510 F.3d 858 (9th Cir. 2007). In *Soltero*, the Court found the term "criminal street gang" was not unconstitutionally ambiguous or vague. *Id.* at 866. Similarly here, a "gang . . . with a history of criminal activity" is permissible. Next, the terms "associate" and "member" have been upheld as permissible in *Soltero*. *Id.* Because the term "club" is also modified by "with a history of criminal

activity," this Court finds Petitioner's Special Condition of his supervised release permissible. Lastly, regarding Petitioner's contention that the *mens rea* requirement "vanishes" if he is discovered in the company of gang members or clubs while wearing colors, clothing, or insignia of a gang, the Court finds this without merit. Conditions 3 and 4, respectively, of Petitioner's supervised release conditions state he may not "knowingly associate with any member, prospect or associate of the Skyline Pirus or any other gang or club with a history of criminal activity," nor "knowingly wear or possess any paraphernalia, insignia, clothing, photographs, or any other materials associated with a gang" unless permission is given by the probation officer. (Doc. No. 74 at 28–29.) The Court finds these conditions presume the prohibited criminal acts require an element of *mens rea*. *See United States v. Vega*, 545 F.3d 743, 750 (9th Cir. 2008) (citing *Staples v. United States*, 511, U.S. 600, 605–06, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994)). Thus, the Court finds Petitioner's trial counsel's performance was reasonable in deciding not to object to Petitioner's supervised release conditions.

**B.    Government Misconduct – Vindictive Prosecution**

Petitioner lastly asserts that the government vindictively prosecuted him by filing an indictment with additional federal charges, based on the same conduct, after Petitioner rejected a plea offer. (Doc No. 81 at 63.) As noted by the government, this claim is procedurally defaulted as this issue was not raised on direct appeal. (Doc. No. 94 at 20.) In a Section 2255 case, any claim that could have been raised, but was not, on direct appeal is procedurally defaulted. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). Petitioner did not raise his vindictive prosecution claim on direct appeal. However, Petitioner contends this claim is not procedurally defaulted because his appellate counsel failed to raise this claim after being instructed by Petitioner to do so. (Doc. No. 81 at 64.) To avoid procedural default, Petitioner must show cause for his failure to raise the issue on direct appeal and actual prejudice as a result of the alleged constitutional violations. *See Coleman v. Thompson*, 501 U.S. 722, 745 (1991).

///

Regarding cause, Petitioner states the cause for procedurally defaulting the vindictive prosecution claim turns on his appellate counsel's failure to raise the issue. (Doc. No. 81 at 64.) However, the Court rejects this claim. Under *Murray v. Carrier*, so long as Petitioner was represented by counsel whose performance was not constitutionally ineffective under the *Strickland v. Washington* standard, Petitioner must "bear the risk of attorney error that results in a procedural default." 477 U.S. 478, 487 (1986). While Petitioner raises an ineffective assistance of counsel claim for his appellate counsel, the Court rejects these claims as well based on the same grounds as above. Because Petitioner has not shown cause, the Court declines to address the issue of actual prejudice. Thus, the Court finds Petitioner's government misconduct claim to be procedurally defaulted.

**C.   Evidentiary Hearing and Appointment of Counsel**

A district court must hold an evidentiary hearing before denying a Section 2255 motion, unless it is conclusively shown that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b); *see Machibroda v. United States*, 368 U.S. 487, 494 (1962). However, if it is clear the petitioner has failed to state a claim, or has "no more than conclusory allegations, unsupported by facts and refuted by the record," a district court may deny a Section 2255 motion without an evidentiary hearing. *United States v. Quan*, 789 F.2d 711, 715 (9th Cir. 1986). As explained above in greater detail, the Court finds that Petitioner has failed to state a claim and has not provided the Court with more than conclusory allegations. The Court finds that an evidentiary hearing is not required. Accordingly, the Court **DENIES** Petitioner's motion for appointment of counsel.

**D.   Certificate of Appealability**

Absent a certificate of appealability from this circuit court or the district court, "an appeal may not be taken from a final decision of a district judge in a habeas corpus proceeding or a proceeding under 28 U.S.C. § 2255." *Chafin v. Chafin*, 568 U.S. 165, 184 (2013). A court may issue a certificate of appealability where the petitioner has made a "substantial showing of the denial of a constitutional right," and reasonable jurists could debate whether the motion should have been resolved differently, or that the issues

presented deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, the Court finds that Petitioner has not made the necessary showing. Thus, a certificate of appealability is therefore **DENIED**.

### IV. CONCLUSION

Based on the foregoing, the Court **DENIES** Petitioner's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. No. 81.) The Court also **DENIES** a certificate of appealability because Petitioner has not "made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). The Court further **DENIES AS MOOT** Petitioner's motion for appointment of counsel. (Doc. No. 140.)

**IT IS SO ORDERED.**

Dated: September 15, 2021

Hon. Anthony J. Battaglia
United States District Judge